■ In the Matter of ELWOOD UNION FREE SCHOOL DISTRICT No. 1 OF THE TOWN OF HUNTINGTON, Petitioner, v. ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board, et al., Respondents.— Proceeding pursuant to article 78 of the CPLR to review a decision and order (one paper) of the respondent Public Employment Relations Board of the State of New York (PERB), dated June 22, 1973, which (1) found that the petitioner school district (the employer) had committed an improper practice, as defined in section 209-a of the Civil Service Law, by refusing to negotiate in good faith and (2) directed the employer's chief executive officer to execute an agreement concerning sabbatical leaves of absence. Petition granted and decision and order annulled, on the law, without costs. In March, 1972, the petitioner's school board passed a resolution denying sabbatical leaves for the school year 1972–1973 in the belief that such leaves had been barred by the moratorium provision of section 82 of the Civil Service Law. Such leaves were governed by a 1970–1972 collective bargaining agreement. The teachers seeking sabbatical leaves then brought a previous article 78 proceeding in the Supreme Court, Suffolk County, challenging the above-mentioned resolution. In June, 1972, the Supreme Court ordered that the requested leaves be granted; and that decision was reaffirmed in August, upon reargument. Throughout this period, representatives of the school district and the teachers were engaged in negotiations upon a new collective bargaining agreement, to cover the school year 1972–1973. On August 18, 1972, prior to receipt of the court's decision upon the reargument, the negotiators executed a written memorandum of agreement on the terms of the new contract. Subsequently, and on September 12, 1972,

the negotiators hammered out a second agreement which was intended to resolve the outstanding sabbatical leave dispute under the expired contract. This agreement had the prior approval of the District Principal but not the school board. The next day, the teachers ratified both agreements and the school board approved the new 1972–1973 contract. The school board, however, refused to approve the sabbatical leave agreement, apparently because it had determined to appeal from the Supreme Court's judgment. The refusal to execute and implement the sabbatical leave agreement was made the subject of an improper practice charge by the teachers' organization. After a full hearing, PERB's hearing officer dismissed the charge, finding that the employer's negotiator had lacked authority to conclude a final sabbatical leave agreement without first submitting it to the school board for approval and that the teachers' negotiators had been aware of this limited authority. However, PERB later overruled the hearing officer, held that the employer had not negotiated in good faith on this issue, and directed the employer's chief executive officer, the District Principal, to execute the agreement. Coincident to PERB's determination, this court, on appeal, modified the Supreme Court's judgment in the previous article 78 proceeding to a direction that the school board and the District Principal " review and consider " the sabbatical leave applications, rather than " grant " them outright, since such leaves were not granted as a matter of right under the governing contract (*Matter of Streb* v. *Board of Educ. of Union Free School Dist. No. 1, Town of Huntington*, 42 A D 2d 598, 599). The sabbatical leave agreement of September 12, 1972, by the way, reaffirmed the applicability of the pertinent contract provisions, but, at the same time, guaranteed that the leaves involved would be granted. In our view, PERB's finding that the employer was guilty of a refusal to negotiate in good faith is unsupported. It is clear from the record that a negotiated settlement of the sabbatical leave dispute was not deemed a condition to approval of the new collective bargaining agreement of August 18, 1972; and the subsequent sabbatical agreement of September 12 was really no less favorable to the teachers than the Supreme Court decision. It was apparently a PERB mediator who pressed the negotiators to settle this issue on the theory, later proved erroneous, that the school board would not ratify the new contract without such an agreement. There is no proof in the record that the school board initiated, authorized or approved this effort to reach a negotiated settlement. The subject agreement is, in truth and fact, nothing more than an attempt at the settlement of a lawsuit. So viewed, it is manifest that the employer's labor negotiator was acting outside his normal scope of authority; and, indeed, the teachers' negotiators were aware of this. There being no evidence that the school board authorized or participated in this settlement effort in any way, except to reject the agreement of September 12, neither the labor negotiator, who had played no legal role in the lawsuit, nor the District Principal could effectuate a binding settlement agreement without prior school board approval. And this is so whether or not the settlement could have been implemented without school board authorization of additional funds. Therefore, under these particular circumstances, the refusal to execute or implement the agreement cannot constitute an improper practice. Cohalan, Acting P. J., Christ, Brennan, Benjamin and Munder, JJ., concur.